1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    PAULA W.,
                                          Case No.  21-04092-DMR
             Plaintiff,

9
        v.                                **ORDER ON CROSS MOTIONS FOR**
10                                        **SUMMARY JUDGMENT**

     KILOLO KIJAKAZI,                     Re: Dkt. Nos. 14, 20
11
             Defendant.
12

13           Plaintiff Paula W. moves for summary judgment to reverse the final administrative

14   decision of the Commissioner of the Social Security Administration ("Commissioner"), which

15   found Plaintiff not disabled and therefore denied her application for benefits under the Social

16   Security Act, 42 U.S.C. § 401 *et seq*.  The Commissioner cross-moves to affirm.  For the reasons

17   stated below, the court grants in part and denies in part Plaintiff's motion and denies the

18   Commissioner's motion.

19   **I.     PROCEDURAL HISTORY**

20           Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on

21   October 17, 2018, alleging disability beginning on May 4, 2018.  Administrative Record ("A.R.")

22   516-22.  Her application was initially denied on December 26, 2018, and again on reconsideration

23   on March 8, 2019.  A.R. 457, 458-66.  An Administrative Law Judge ("ALJ") held a hearing on

24   June 8, 2020, and issued an unfavorable decision on September 23, 2020.  A.R. 419-47, 20-30.

25           The ALJ determined that Plaintiff has the following severe impairments:  obesity;

26   psychogenic non-epileptic spells (subsequently referred to as "PNES" or "seizures");[1] unspecified

27   _____

28   [1] "Psychogenic non-epileptic spells," also referred to as "psychogenic non-epileptic seizures" or
     "PNES," are "episodes of movement, sensation, or behaviors that are similar to epileptic seizures

anxiety disorder; depressive disorder; and somatic symptom disorder.  A.R. 22.  The ALJ found that Plaintiff retains a residual functional capacity ("RFC") for medium work "except that [Plaintiff] would need to avoid climbing ladders, ropes, scaffolds, unprotected heights, hazards such as sharp objects, operating moving machinery, and large bodies of water."  A.R. 25.  The ALJ also added the following non-exertional limitations:  (1) Plaintiff can "perform simple and repetitive tasks and handle occasional changes in a work setting;" and (2) she can "have occasional interaction with the general public and coworkers but should avoid tandem tasks."  A.R. 25.

Relying on the opinion of a vocational expert ("V.E.") who stated that an individual with such an RFC could perform other jobs existing in the economy, including kitchen helper, laundry worker, and automobile detailer, the ALJ concluded that Plaintiff is not disabled.  A.R. 31.

After the Appeals Council denied review, Plaintiff sought review in this court pursuant to 42 U.S.C. § 405(g).

## II.   ISSUES FOR REVIEW

1.   Is remand required for the ALJ to consider new evidence submitted to the Appeals Council?

2.   Did the ALJ err in failing to develop the record regarding the impact of Plaintiff's mental impairments, including her PNES?

3.   Did the ALJ err in evaluating Plaintiff's obesity?

4.   Did the ALJ err in discounting the opinion of Plaintiff's treating therapist, Ms. Cienna Bancroft?

5.   Did the ALJ err in evaluating Plaintiff's credibility?

6.   Was the ALJ's decision constitutionally defective based on *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020)?

---

but do not have a neurologic origin; rather, they are somatic manifestations of psychologic distress."  Taoufik M. Alsaadi, M.D., and Anna Vintner Marquez, M.D., American Acad. Fam. Physicians, Psychogenic Nonepileptic Seizures, https://www.aafp.org/pubs/afp/issues/2005/0901/p849.html#  (last visited June 30, 2022).

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### IV.   DISCUSSION

#### A.   New Evidence Submitted to Appeals Council

##### 1.   Background

Although Plaintiff is now represented, she was unrepresented at her June 2020 ALJ hearing.  A.R. 424.  The ALJ entered into evidence a number of exhibits at the hearing, including Plaintiff's medical records, which were comprised of exhibits 1F through 6F.  A.R. 428. However, the ALJ noted that the Social Security Administration ("SSA") had encountered difficulty obtaining some of Plaintiff's more recent medical records, and, at the hearing, advised Plaintiff that the SSA would continue to seek and share with her any updated records it received

3

1    following the hearing.  *See* A.R. 430-32, 446.[2]

2        Subsequently, sometime prior to the ALJ's September 23, 2020 decision, the SSA received

3    additional medical records for Plaintiff.  A.R. 755-904 (post-hearing records identified as exhibits

4    7F-10F).  Those records included the following:

5

6        (1)    January and April 2020 psychosocial assessment reports completed by
         Monterey County Behavioral Health Department ("MCBH") therapists Daniel
7        Constanz, LMFT,  and Shaina Romero, AMFT, respectively, during and
         immediately following Plaintiff's psychiatric hold at Natividad Hospital Mental
8        Health Unit ("Natividad") based on her suicide risk, A.R. 755-62 ("exhibit 7F");

9        (2)    January  through June 2020 progress notes from MCBH clinicians,
10       including psychiatrist Dr. Jefferson Nelson, therapist Romero, and Nurse
         Practitioner, Phillip Jones ("Nurse Jones"), from a time immediately following
11       Plaintiff's psychiatric hold at Natividad, A.R. 763-817 ("exhibit 8F");

12       (3)    January 4, 2020 through January 7, 2020 Natividad medical records
13       regarding Plaintiff's hospitalization for suicide risk,  A.R. 818-902 ("exhibit
         9F"); and
14
         (4)    a June 15, 2020 treating source statement from therapist Romero, A.R.
15       903-04 ("exhibit 10F").

16

17       As the ALJ observed, "a significant majority" of the medical evidence included treatment

18   notes and medical opinions that post-dated Plaintiff's June 30, 2018 "date last insured" or "DLI."

19   A.R. 24 (noting that "in most cases" the evidence was for treatment "eighteen months after the

20   [DLI] or later"); A.R. 26 (noting that "the record lacks significant evidence from prior to the date

21   last insured"). [3]  However, the ALJ appropriately recognized that the post-DLI evidence, which

22   pertained to Plaintiff's "pre-expiration condition[s]," was nevertheless relevant and required

23   consideration on the merits.  *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) ("medical

24

25   ───────────────
     [2] Indeed, Plaintiff's medical providers, including Nurse Practitioner, Phillip Jones, referenced the
26   same problems.  *See* A.R. 142, 151 (Nurse Jones advises Plaintiff soon after her June 2020 hearing
     that the Monterey County Behavioral Health Department was still waiting for SSA's request for
27   her medical records).

28   [3] The "relevant period" in this case was very short -- less than two months -- from May 4, 2018,
     Plaintiff's alleged onset date, until June 30, 2018, Plaintiff's DLI.  *See* A.R. 20, 21.

evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition"); *accord Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1232 (9th Cir. 2011); *see* A.R. 24 (ALJ noted that the post-DLI evidence "is considered in terms of the insight it offers into the claimant's overall conditions that existed prior to the relevant period"). Rather than rejecting the evidence outright based on its post-DLI status, the ALJ noted that she weighed the remoteness of the evidence in assessing its persuasiveness to her RFC determination. A.R. 24 (noting that "the more remote the evidence is from the [DLI] – and, thus, the relevant period – the less useful it is in helping to determine the [Plaintiff's] residual functional capacity during that period").   Given the Ninth Circuit's recognition that "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis," the ALJ utilized the correct approach.  *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *see also Thompson v. Colvin,* No. 13-CV-01389-JCS, 2014 WL 4100744, at *16 (N.D. Cal. Aug. 20, 2014) (holding that ALJ erred in rejecting physicians' opinions because they did not treat the plaintiff during the insured period).

Following the ALJ's unfavorable decision in September 2020, Plaintiff requested review by the Appeals Council and submitted additional new evidence ("new evidence") with her request, all of which also post-dated Plaintiff's DLI.  A.R. 1-3.  The evidence included:

(1)      July 16, 2018 to August 30, 2018 medical records from Salinas Valley Medical Clinic Multispecialty Group ("SVMC"), A.R. 84-132;

(2)      October 1, 2018 to December 29, 2020 medical records from SVMC, AR 35-83;

(3)      April 9, 2019 to April 25, 2019 medical records from Mee Memorial Hospital, A.R. 331-418;

(4)      June 10, 2020 to January 25, 2021 medical records from MCBH, A.R. 133-325; and

(5)      a January 22, 2021 functional assessment from Nurse Jones, A.R. 326-30.

It is the above five categories of "new evidence" that are currently at issue in this claim.

United States District Court
Northern District of California

2.     **Analysis**

a.     **Appeals Council's Rejection of New Evidence Based on Treatment Dates**

Unlike the ALJ, in denying Plaintiff's request for review, the Appeals Council refused to consider most of the new post-DLI evidence, including categories two, three, four, and five listed above, finding instead that the evidence "did not relate to the period at issue" and thus "did not affect the decision about whether [Plaintiff was] disabled beginning on or before June 30, 2018." [4] A.R. 2. In doing so, the Appeals Council appears to have drawn an arbitrary cut-off line between August and October 2018 in assessing whether evidence "relate[d] to the period at issue." [5]  A.R. 2. This was error.

Social Security regulations provide that the Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  "[E]vidence dated after an ALJ's decision can still be related to the period before the ALJ's decision." *Jesus M. G. R. v. Kijakazi*, No. 10-cv-07426-DMR, 2021 WL 4243387, at *4 (N.D. Cal. Sept. 17, 2021) (quoting *Baker v. Colvin*, No. 16-CV-00771-EMC, 2016 WL 5869944, at *4 (N.D. Cal. Oct. 7, 2016) (collecting cases).  "This includes records addressing treatment for 'the same kinds of impairments for which [a claimant] was treated before the ALJ's decision' and treatment for ongoing impairments."  *Id.* (quoting *Baker*, 2016 WL 5869944, at *5) (concluding that treatment records for mental health conditions that post-dated the ALJ's decision were related to the period before the decision, even though the providers had not treated the plaintiff before the decision); *see also Bazan v. Berryhill*,

---

[4] By contrast, as discussed below, the Appeals Council found the first category of evidence did "not show a reasonable probability that it would change the outcome of the decision."  A.R. 2.

[5] The Appeals Council rejected Plaintiff's post-DLI SVMC records dated July 16, 2018 to August 30, 2018 (category one above) on materiality and impact grounds.  *See* A.R. 2.  However, by contrast, the Appeals Council rejected Plaintiff's SVMC records dated on or after October 1, 2018 (category two above) as "unrelated to the period at issue."  *See* A.R. 2, A.R. 35-83.  The additional medical records from categories three, four, and five above, which the Appeals Council similarly rejected as "unrelated to the period at issue," were from 2019, 2020, and 2021.  A.R. 2.

No. 18-CV-01224-KAW, 2019 WL 4751874, at *7 (N.D. Cal. Sept. 30, 2019) (finding that treating physician's supplemental report completed following the ALJ's decision related to the period before the hearing decision where the report addressed earlier treatment notes). The Ninth Circuit has further recognized that where medical opinions "refer back" to the same chronic condition and symptoms discussed in earlier medical records – even those from several years prior -- the "fact that [the most recent] opinions were issued significantly after [the plaintiff's] DLI does not undercut the weight those opinions are due." *Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017).

Here, the new evidence rejected by the Appeals Council concerned Plaintiff's chronic PNES, anxiety, depression, and somatic symptom disorder, and was related to the very impairments from which Plaintiff suffered *both* on or before the date of the ALJ's September 2020 hearing decision *and* on or before her June 30, 2018 DLI. For example, the symptoms and conditions referenced in Plaintiff's new MCBH records (category four listed above) clearly related to the same chronic impairments previously treated by Nurse Jones and therapist Romero, and considered on the merits by the ALJ. *See* A.R. 24, 26 (considering exhibit 8F).[6] The same is the case with categories two, three, and five of the new evidence. Category two contains SVMC records that are a continuation of the same SVMC records included in category one (which, interestingly, the Appeals Council did not reject based on the treatment date), and similarly concerns Plaintiff's chronic pre-DLI conditions. A.R. 35-83. Category three includes medical records of the same type and from the same source, Mee Memorial Hospital, as those considered by the ALJ below concerning Plaintiff's pre-DLI PNES. A.R. 331-418; *see also* A.R. 23-25, 27 (citing to A.R. 679-734, exhibit 5F). Finally, Nurse Jones' 2021 RFC opinion (category five above) pertains to Plaintiff's chronic pre-DLI conditions as well. A.R. 326-30;

Accordingly, the Appeals Council erred in rejecting Plaintiff's new medical evidence from 2018-2021, because the evidence constituted the ongoing treatment records for Plaintiff's chronic

---

[6] Indeed, the new evidence contained Nurse Jones' progress notes that were dated June 11, 2020 -- just one week following Nurse Jones' prior June 4, 2020 progress notes, which the ALJ deemed relevant and considered on the merits. *See* A.R. 24, 26; *see also* A.R. 142 (June 11, 2020 progress notes); A.R. 816 (June 4, 2020 progress notes and prior "exhibit 9F" considered by ALJ).

United States District Court
Northern District of California

conditions and symptoms.  *See Svaldi*, 720 F. App'x at 343–44 (concluding that ALJ erred in refusing to give any weight to the plaintiff's treating physician's 2012 and 2014 opinions, which "refer[red] back to the same chronic condition and symptoms" from 2010); *see also Taylor*, 659 F.3d at 1232 (remanding to ALJ where Appeals Council failed to consider additional psychiatric evaluation and medical source statement on the mistaken belief that the new evidence did not relate to the period before the date of the ALJ's decision).

          **b.**       **Materiality and Impact of New Evidence on Outcome**

As noted, in addition to relating to the period on or before the date of the hearing decision, evidence must also be "new," and "material," and there must be "a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).  Here, the court concludes that all five categories of the new evidence are material, and there is a reasonable possibility that inclusion of the records would have changed the outcome of the disability determination.

"Evidence is new if it is not duplicative or cumulative" and if it was "not available when the ALJ made their decision."  *Jesus M. G. R.*, 2021 WL 4243387, at *2 (quoting *Baker*, 2016 WL 5869944, at *3).  To be material, "the new evidence must bear directly and substantially on the matter in dispute."  *Id.* (quoting *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).  The claimant must also "demonstrate that there is a reasonable possibility that the new evidence would have changed the outcome" of the disability determination.  *Id.*  Where the Appeals Council mistakenly fails to consider new evidence based on an erroneous assessment of that evidence, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence.  *See Taylor,* 659 F.3d at 1232; *accord Edgecomb*, 741 F. App'x at 393.

          **i.**    **July 16, 2018 to August 30, 2018 Salinas Valley Medical Clinic ("SVMC") Records (A.R. 84-132)**

This category of evidence consists primarily of treatment and progress notes from treating SVMC neurologist, Dr. Michael Zupanic, regarding Plaintiff's psychogenic seizures or "PNES," which the ALJ recognized as a severe impairment.  A.R. 22, 84-132.  It is unique because it is the only category of new evidence for which the Appeals Council addressed its materiality and

United States District Court
Northern District of California

1    impact, holding, without explanation, that there was no "reasonable probability that it would

2    change the outcome of the decision."[7]  A.R. 2.

3           Plaintiff has suffered from psychogenic seizures for many years  -- since approximately

4    2015.  A.R. 651.  She testified that her symptoms worsened in May 2018, such that they prevented

5    her from continuing to work as a bus driver.  *See* A.R. 651, 96.  In July and August 2018, Plaintiff

6    was treated by Dr. Zupanic.  A.R. 84-132.  During a visit with Plaintiff in July 2018, Dr. Zupanic

7    observed her having a seizure that lasted thirty minutes and fluctuated in severity.  A.R. 97-98.

8    Although Plaintiff's neurological examination was normal, Dr. Zupanic opined that "this is a

9    challenging case."  A.R. 98.  At subsequent visits, Dr. Zupanic noted that Plaintiff had tested

10   "positive for tremors," A.R. 102, but that he suspected they were non-epileptic.  A.R. 108.  On

11   August 30, 2018, Dr. Zupanic observed that in addition to Plaintiff's "daily seizures," Plaintiff

12   also continued to suffer from "significant anxiety despite taking Prozac and Xanax," contrary to

13   the ALJ's finding otherwise.   A.R. 129; A.R. 27 (suggesting that Plaintiff's medications were

14   "effective in reducing tremors").

15          At the time the ALJ made her decision, she had no records from SVMC, and, specifically,

16   none from Dr. Zupanic.[8]  Accordingly, these records cannot be considered cumulative or

17   duplicative.  Moreover, the records are relevant to the origin and severity of Plaintiff's PNES and

18   other mental impairments, and they corroborate Plaintiff's symptom testimony that the ALJ

19   rejected in part.  *See* A.R. 26 (finding that Plaintiff's "statements concerning the intensity,

20   persistence[,] and limiting effects of [her] symptoms are not entirely consistent with the medical

21   evidence and other evidence in the record").

22          For these reasons, this category of new evidence is material and there is a reasonable

23   probability that these records, viewed with the additional new evidence described below, would

24

25   [7] Although it did not elucidate the reason, the Appeals Council presumably did not reject this post-
26   DLI evidence because of its proximity to Plaintiff's June 30, 2018 DLI.  As noted, the ALJ
     appears to have drawn an arbitrary line in terms of the evidence that it considered sometime
27   between August and October 2018.  *See* A.R. 2; *see also* A.R. 84-132; *cf.* A.R. 35-83.

28   [8] The SSA requested Plaintiff's records from SVMC prior to the ALJ's hearing, but it received
     none.  A.R. 674-78.  As noted above, Plaintiff was unrepresented at the time.

United States District Court
Northern District of California

have changed the outcome of the disability determination.

### ii. Nurse Jones' January 22, 2021 RFC Opinion (A.R. 336-30)

Immediately following her psychiatric hospitalization in early January 2020, Plaintiff began receiving mental health services from MCBH therapist, Ms. Romero, and then several months later, in April 2020, from MCBH nurse practitioner, Nurse Jones, as well.  A.R. 771, 796.

After the June 2020 hearing, the ALJ obtained progress notes, a psychosocial assessment report, and a treating source statement from Plaintiff's therapist, Ms. Romero, all dated between January and May 5, 2020.  *See* A.R. 755-62 ("exhibit 7F"), 763-817 ("exhibit 8F"), 903-04 ("exhibit 10F"); A.R. 804-06 (May 5, 2020 session with Ms. Romero).  The ALJ also obtained progress notes from Plaintiff's appointments with Nurse Jones dated April-June 2020.  A.R. 796, 816.  The ALJ considered the records on the merits.[9]

In January 2021, following the ALJ's written decision and nine months after Nurse Jones began treating Plaintiff, Nurse Jones completed a mental impairment questionnaire opining regarding Plaintiff's RFC.  A.R. 326-30.  Nurse Jones stated that Plaintiff suffered from depression, post-traumatic stress disorder ("PTSD"), trichotillomania, obsessive compulsive disorder, and PNES.  A.R. 336.  He noted that she had tried "a number of psychotropic medications thus far and has had very limited results in terms of improvement in symptoms."  A.R. 326.  Nurse Jones opined that Plaintiff possessed marked limitations in two out of four functional areas, including in her ability to understand, remember, and apply information.  A.R. 329.  He concluded that Plaintiff possessed extreme limitations in her ability to adapt or manage

---

[9] While the ALJ did not specifically address the persuasiveness of exhibits 7F, 8F, and 10F, presumably because they did not contain any medical opinions, the ALJ did cite to statements included in those records as support for her step three finding that Plaintiff's mental impairments did not meet or medically equal a listing and as support for discounting Plaintiff's own symptom testimony.  *See* A.R. 24 (citing exhibit 8F as support for Plaintiff's alternating normal mood and mood disturbances at visits); A.R. 25 (citing exhibit 8F as revealing Plaintiff's "limited insight and judgment on occasion"); A.R. 27 (citing exhibit 8F as evidence that Plaintiff's medications were effective in reducing tremors in discounting Plaintiff's testimony); *see also* 20 C.F.R. § 404.1513(a)(2) (definition of "medical opinion"); 20 C.F.R. § 404.1520b (Contrary to "medical opinions," for which an ALJ is required to provide their reasons regarding persuasiveness, an ALJ is typically not required to provide any analysis regarding how they considered "other medical evidence," as defined by 20 C.F.R. § 404.1513(a)(3)).

herself and in her ability to concentrate, persist, or maintain pace.  A.R. 329.  In support of his

RFC opinion, Nurse Jones explained that Plaintiff "has multiple psychogenic seizures dail[y],"

that her executive functioning is impaired, that she "has problems with irritability [and] anger,"

and that "due to her severe symptoms, she is "dependent largely on family for financial,

emotional, [and] material support."  A.R. 329.

Nurse Jones' RFC opinion corroborates Plaintiff's symptom testimony that was previously

rejected by the ALJ, and it is also relevant to the ALJ's assessment of the severity of her

impairments and to the persuasiveness of the July 2019 RFC opinion from Plaintiff's prior treating

therapist, Ms. Cienna Bancroft.[10]  A.R. 738-41.  Nurse Jones' RFC opinion, based on nine months

of treatment, is consistent with the functional limitations opined to by Plaintiff's therapist, Ms.

Bancroft.  Like Nurse Jones, therapist Bancroft assessed Plaintiff with marked limitations in her

ability to concentrate, persist, or maintain pace, and in her ability to adapt or manage herself.  A.R.

749.  The ALJ, however, found Ms. Bancroft's opinion "not persuasive."  A.R. 28.

Because Nurse Jones' RFC opinion is material and there is a reasonable probability that it,

would have changed the outcome of the disability determination, the Appeals Council erred in its

refusal to consider the opinion on its merits.  *See Mayes*, 276 F.3d at 462.

### iii.  June 10, 2020 to January 25, 2021 MCBH Records (A.R. 133-325)

As noted above, the ALJ considered Plaintiff's then-existing MCBH medical records dated

through June 4, 2020.  *See* A.R. 24, 26; A.R. 816 (exhibit 8F, including Nurse Jones' progress

notes from June 4, 2020 visit);  *see also generally* A.R. 755-62 ("exhibit 7F"), 763-817 ("exhibit

8F"), 903-04 ("exhibit 10F"); A.R. 804-06 (May 5, 2020 session with Ms. Romero).  In

conjunction with her Appeals Council request for review, in addition to Nurse Jones' RFC opinion

discussed above, Plaintiff also submitted subsequent related progress and treatment notes from her

June 2020 through January 2021 sessions with therapist Romero, Nurse Jones, and other MCBH

---

[10] Therapist Bancroft treated Plaintiff once a week from October 2018 through January 2020, at which point Plaintiff began seeing therapist Romero.  A.R. 745-46.

clinicians.  A.R. 140-325.  This category of MCBH evidence further included a second psychosocial assessment report from therapist Romero dated January 5, 2021.  A.R. 133-39.

The new MCBH evidence is relevant to the severity of Plaintiff's seizures and mental impairments, and it additionally supports Plaintiff's testimony regarding the disabling effects of her seizures.  Nurse Jones' and Ms. Romero's treatment notes demonstrate that Plaintiff tried many different medications, but that the frequency and severity of her seizures nevertheless fluctuated.  *See* A.R. 142 (Plaintiff had three seizures in one day in June 2020); A.R. 211 (Plaintiff tried new medications for her seizures in September 2020, and the frequency of the seizures decreased); A.R. 246 (in spite of new medications from September 2020, seizures begin to increase in frequency again).  Their treatment notes similarly document the fluctuating nature of Plaintiff's depression and anxiety.  *See, e.g.,* A.R. 213 (Plaintiff's partner reports to her therapist that she is not showering or changing her clothes and that she is "going from one extreme to another").  Therapist Romero's April 2020 psychosocial report provides additional relevant details regarding Plaintiff's functioning and the nature and longevity of her mental impairments.  *See generally* A.R. 133-139; *see also* A.R. 134 (noting that Plaintiff's "symptoms impact functioning in obtaining and maintaining employment, family relationships, social domains, and physical health").

Therefore, this category of MCBH evidence is also material, and there is a reasonable probability that these records, viewed with the additional new evidence, would have changed the outcome of the disability determination.  *See Mayes*, 276 F.3d at 462.

### iv.  April 9, 2019 to April 25, 2019 Mee Memorial Hospital Records (A.R. 331-418)

This category of new evidence primarily consists of Plaintiff's visits to her primary care physician, Dr. Alejandre Hilda, whose prior visit records were included in the record before the ALJ.  *See* A.R. 679-734.  The new evidence also includes progress notes from Plaintiff's April 19, 2019 visit with neurologist Dr. Kimford Meador, during which she suffered from a seizure – similar to that described in Dr. Zupanic's July 2018 treatment notes.  A.R. 333-34.  During that April 2019 visit, Plaintiff was waiting in the lobby when she had a seizure and had to be moved to

United States District Court
Northern District of California

a private room, where she was tended to by medical staff.  A.R. 333.  Dr. Meador's progress notes state that Plaintiff's "[h]ead was secured and a pillow was placed on her neck and head so as to avoid any injury."  A.R. 334.  Plaintiff suffered from generalized tremors for approximately four minutes, and her mother-in-law had to come pick her up from the doctor's office.  A.R. 333.

This category also includes notes from Dr. Hilda regarding Plaintiff's increasing anxiety and an increased frequency in seizures – up to four in one day – which Dr. Hilda stated prevented Plaintiff from attempting to participate in a "work experience program."  A.R. 409, 416.

Similar to the above categories of evidence, the court finds this category is material to the severity of Plaintiff's impairments, Plaintiff's credibility, and her functional limitations, and there is a reasonable probability that these records, viewed with the additional new evidence, would have changed the outcome of the disability determination.  *See Mayes*, 276 F.3d at 462.

### v.  October 1, 2018 to December 29, 2020 SVMC Records (A.R. 35-83)

In addition to routine care and tests, this second category of SVMC evidence includes additional, subsequent records from neurologist Dr. Zupanic, documenting and describing Plaintiff's seizures.[11]  These are material for the same reasons as those stated above regarding the July 16, 2018 to August 30, 2018 SVMC records. A.R. 84-132.

In sum, all five categories of the new evidence submitted to the Appeals Council pertain to the very impairments that the ALJ found to be severe, and thus relate to the period on or before the ALJ's September 2020 hearing decision.  *See* 20 C.F.R. § 404.970(a)(5).  Additionally, the court finds that all five categories of the new evidence are both new and material, and there is a reasonable probability that the additional evidence would change the outcome.  *See id.*  For these reasons, the court remands to the ALJ to consider the new evidence.  *See Taylor*, 659 F.3d at 1232. Consideration of the new evidence will likely impact other aspects of the ALJ's decision, including the ALJ's evaluation of the medical opinion evidence and the evaluation of Plaintiff's credibility.  Accordingly, the court does not reach Plaintiff's related challenges (claims four and

---

[11] Plaintiff followed up with Dr. Zupanic in November and December 2020.  A.R. 84-132.

United States District Court
Northern District of California

five above) to the ALJ's opinion.[12]  On remand, the ALJ shall re-evaluate those issues in light of the new evidence.

## B.    ALJ's Failure to Develop the Record

Plaintiff argues that because the ALJ rejected the only medical opinion on record assessing the functional limitations associated with her mental impairments and PNES -- that from therapist Bancroft -- the ALJ was then required to order a consultative examination or to obtain testimony from a medical expert regarding the extent of her PNES and mental impairments and their impact on her ability to work.  The court agrees.

### 1.  Legal Standard

While it is true that a plaintiff bears the overall burden of proving disability, the ALJ in a social security case bears an independent and "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  Importantly, this duty extends not only to unrepresented claimants, but also to cases where the claimant has representation.  *See Smolen*, 80 F.3d at 1288; *see also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).  This duty is heightened where the claimant may be mentally ill and thus unable to effectively protect their own interests.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The existence of ambiguous evidence triggers the ALJ's duty to "conduct an appropriate inquiry."  *Id.* (quoting *Smolen*, 80 F.3d at 1288) ("If the ALJ thought [they] needed to know the basis of [a physician's] opinions in order to evaluate them, [they] had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

---

[12] Nevertheless, the court addresses several of Plaintiff's additional claims (claims two, three, and six) because the outcome of those claims impacts the scope of the ALJ's review on remand and/or the constitutionality of the ALJ's delegation of authority in this case.  For example, the court has addressed Plaintiff's claim that the ALJ failed to adequately develop the record regarding the functional limitations associated with her mental impairments, including her PNES, because additional development is indeed required on remand.

United States District Court
Northern District of California

1    the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d

2    at 1150 (citations omitted).  The regulations additionally provide that the ALJ may order further

3    consultative examination to "resolve an inconsistency in the evidence or when the evidence as a

4    whole is insufficient to support a determination or decision." *See* 20 C.F.R. § 404.1519a.  Further

5    development of the record is required when the additional evidence needed is not contained in the

6    records of the claimant's medical sources, and when highly technical or specialized medical

7    evidence not available from the claimant's medical sources is needed.  *See id.*  Once the duty to

8    further develop the record is triggered, failure to do so constitutes reversible error.  *See*

9    *Tonapetyan*, 242 F.3d at 1150–51.

                              **2.       Analysis**

11       Here, several state agency consulting physicians reviewed Plaintiff's medical records in

12   December 2018, and again in March 2019.  A.R. 452, 462-63.  However, as the ALJ noted, the

13   consulting physicians erroneously found that Plaintiff's medical record "lacked evidence of

14   seizures prior to [Plaintiff's DLI]." A.R. 28.  Because Plaintiff's "PNES condition existed during

15   the relevant period and as far back as the alleged onset date," the ALJ determined that the state

16   consultants' opinions were "not persuasive" and thus did not utilize their opinions in assessing

17   Plaintiff's functional limitations.[13]  A.R. 28.

18       At the time the ALJ issued her decision, Plaintiff's therapist, Ms. Bancroft, was the only

19   other medical source to have provided an opinion regarding Plaintiff's functional limitations in

20   light of her mental impairments and PNES.   A.R. 746-50.  At the time Ms. Bancroft completed

21   the July 2019 mental impairment questionnaire, she had treated Plaintiff once a week for

---

[13] The court acknowledges that what were previously "opinions" from state agency medical and psychological consultants have now been relabeled as "prior administrative medical findings."  20 C.F.R. § 416.913(a)(5); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2016 WL 4702272, 81 Fed. Reg. 62560-01, at 62564 (Sept. 9, 2016).  However, because "prior administrative medical findings" continue to be treated the same as other medical opinions, for clarity, the court continues to refer to the "prior administrative medical findings" as "opinions" throughout this Order.  *See* 20 C.F.R. § 404.1520c (considering "prior administrative medical findings" in the same manner and using the same factors as "medical opinions"); *see also* 81 Fed. Reg. 62560-01, at 62564 ("We would consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions from medical sources.").

United States District Court
Northern District of California

1    approximately nine months.  A.R. 746.  As noted, Ms. Bancroft assessed Plaintiff with marked

2    limitations in her ability to concentrate, persist, or maintain pace, and in her ability to adapt or

3    manage herself, A.R. 749, but the ALJ found that Ms. Bancroft's opinion was "not persuasive as

4    inconsistent with the record evidence."  A.R. 28.

5         Because the ALJ found all of the medical opinions "not persuasive," the ALJ therefore did

6    not rely on any medical opinions in assessing how Plaintiff's PNES and mental impairments

7    impacted her ability to work.  Plaintiff argues that, as a layperson, the ALJ was not equipped to

8    adequately assess the severity of and the functional limitations associated with her PNES, which,

9    she contends, is exactly what the ALJ did in the absence of medical opinions.  Pl.'s Mot. 19.

10   Specifically, Plaintiff asserts that the ALJ's layperson limitations that she "avoid climbing" and

11   operating "moving machinery" did not adequately capture the limitations associated with her

12   PNES and were not based on a medical assessment.  *See* A.R. 25.  The Commissioner counters

13   that the ALJ appropriately considered the medical opinions, including those from the state agency

14   consultative physicians, and that the ALJ was not obligated to "accept everything any specific

15   source said."  Def.'s Mot. 14.

16        "An ALJ cannot arbitrarily substitute [their] own judgment for a competent medical

17   opinion, and [they] must not succumb to the temptation to play doctor and make [their] own

18   independent medical findings." *Terrell W. v. Saul*, No. 19-CV-07274-JSC, 2021 WL 461893, at

19   *3 (N.D. Cal. Feb. 9, 2021) (quoting *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal.

20   2006)).  "Rather, the ALJ's RFC determination or finding must be supported by medical evidence,

21   particularly the opinion of a treating or an examining physician." *Id.; see also Rivera v. Berryhill*,

22   No. ED CV 16-791-SP, 2017 WL 5054656, at *5 (C.D. Cal. Oct. 31, 2017) ("The absence of a

23   medical opinion is not necessarily fatal, but the RFC determination still must be supported by

24   substantial evidence.").

25        In assessing Plaintiff's functional limitations related to her seizures and mental

26   impairments, the ALJ cited in part to progress notes from an examining neurologist, Dr. Kimford

27   Meador, and from Plaintiff's primary care physician, Dr. Hilda.  A.R. 27 (citing A.R. 689 (Dr.

28   Hilda) and A.R. 669-70 (Dr. Meador)).  However, although both physicians observed Plaintiff's

United States District Court
Northern District of California

seizures during office visits in August 2018, neither Dr. Hilda nor Dr. Meador offered an opinion

regarding Plaintiff's functional limitations associated with her PNES.  A.R. 670; [14] A.R. 689 (Dr.

Hilda observed a seizure during which Plaintiff refused an ambulance and was subsequently taken

to the hospital by her mother-in-law); *see also* 20 C.F.R. § 404.1513(a)(2) (defining a "medical

opinion" as "a statement from a medical source about what [the claimant] can still do despite

[their] impairment(s) and whether [they] have one or more impairment-related limitations or

restrictions" in their "ability to perform [the] physical demands of work activities, such as sitting,

standing, walking, lifting, carrying, pushing, pulling or other physical functions . . . ."); *see also* 81

Fed. Reg. at 62,562  (In revising the definition of "medical opinion," the SSA recognized that

"[d]iagnoses and prognoses do not describe how an individual functions" and that, "[a] more

appropriate focus of medical opinions would be perspectives from medical sources about

claimants' functional abilities and limitations.").  Nor did Drs. Hilda's or Meador's treatment

records provide sufficient indications regarding Plaintiff's functional limitations.  *See* A.R. 689,

669-70.

The ALJ's rejection of the state agency consulting physicians' opinions and the opinion of

therapist Bancroft regarding Plaintiff's limitations rendered the record "inadequate" or

"ambiguous" on the issue of the impact of the functional limitations associated with Plaintiff's

mental impairments, and PNES, specifically.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th

Cir. 2005) (The record will be considered "inadequate" or "ambiguous" when a medical source

has provided a medical opinion that is not supported by the evidence.).  Moreover, this "lack of a

relied-upon medical opinion coupled with the ALJ's analysis reveals the ALJ's [PNES-related]

RFC finding 'is evidently nothing more than the ALJ's own exploration and assessment of

Plaintiff's impairments.'"  *Russell C. v. Saul*, No. 20-CV-256-MMA (RBM), 2021 WL 1116034,

---

[14] Dr. Meador noted that Plaintiff was having seizures daily, and that they usually lasted approximately thirty minutes.  A.R. 670.  He described the seizure he witnessed, during which Plaintiff was verbally responsive, noting that "[h]er movements changed in character during the attack taking on many forms such as head back and forth[,] vertical and later horizontal, body jerks up and down or back forth, and hands/arms with tremor or other times waiving motions." A.R. 670.  He also observed Plaintiff had an "unsteady gait" during the seizure.  A.R. 670.  While Dr. Meador did not opine regarding Plaintiff's work limitations, he did suggest that she see a psychiatrist and follow-up with another neurologist, Dr. Zupanic.  A.R. 670.

at *4 (S.D. Cal. Mar. 24, 2021) (quoting *Banks*, 434 F. Supp. 2d at 805) (holding that ALJ erred when they failed to rely on a medical opinion to determine the RFC associated with the plaintiff's physical and mental impairments after rejecting the opinions from state agency consulting physicians and psychiatrists and from the plaintiff's psychiatrist); *Rivera*, 2017 WL 5054656, at *5 (ALJ erred where his determination concerning the severity of plaintiff's neck and back pain and their resultant functional limitations was solely based on the ALJ's own interpretation of the MRIs and treatment notes).  Given the ambiguity, the ALJ should have retained a medical expert or consultant to properly evaluate and interpret Plaintiff's functional limitations in light of her PNES and mental impairments.  *See id.* at *4–5 (remanding for the ALJ to retain a consultative examiner or medical expert to assess the limitations associated with the plaintiff's degenerative disc disease).

The court has already remanded to the ALJ to consider the five categories of new evidence discussed above.  Because the new evidence in fact contains an additional medical opinion from Nurse Jones regarding Plaintiff's RFC, the court recognizes that it may not be necessary for the ALJ to call an additional medical expert on remand – depending on the weight the ALJ affords the additional medical opinion.  However, if, on remand, the ALJ rejects the additional sole medical opinion, then the ALJ would be required to further develop the record regarding Plaintiff's functional limitations associated with her mental impairments and PNES.  *See Tackett*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for their interpretation of medical evidence); *Heskett v. Astrue*, No. C-11-03377-DMR, 2012 WL 1997166, at *9 (N.D. Cal. June 4, 2012) (quoting *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]n ALJ is simply not qualified to interpret raw medical data in functional terms.").

### 3.    Obesity

Plaintiff also contends that the ALJ failed to properly evaluate the limiting effects of her obesity.  The court disagrees.

The ALJ acknowledged Plaintiff's obesity in her step two analysis, noting that Plaintiff had a body mass index (BMI) of 48.4.  A.R. 23.  The ALJ also referenced Social Security Ruling ("SSR") 19-2p, stating that she "considered [Plaintiff's obesity] in terms of its possible effects on

[her] ability to work," even though no physician found it "independently disabling."   A.R. 23; *see*

*Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (Social Security Rulings are binding on all

SSA decisionmakers); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009)

(holding that Social Security Rulings "do not carry the 'force of law,' but they are binding on

ALJs nonetheless").  The ALJ found Plaintiff's "obesity causes or contributes to more than

minimal functional limitations, and is therefore severe."  A.R. 23.

### a.  Legal Standard

While obesity is no longer listed among the Listing of Impairments, "the functional

limitations caused by the [medically determinable impairment] of obesity, either alone or in

combination with another impairment(s), may medically equal a listing."  Social Security Ruling

("SSR") 19-2p, 2019 WL 2374244, at *2 (May 20, 2019).[15]  "In evaluating obesity to determine a

claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability

to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (discussing SSR 02–1p, 2002 WL 34686281

(September 12, 2002)).[16]  "As with other impairments, the ALJ should explain how [they]

---

[15] On May 20, 2019, the SSA rescinded and replaced its existing social security ruling governing obesity, SSR 02-1p, with SSR 19-2p.  *See* SSR 02–1p, 2002 WL 34686281; SSR 19-2p, 2019 WL 2374244, at *5 n.14.  The SSA explained that SSR 19-2p applies "to new applications filed on or after the applicable date of the SSR *and to claims that are pending on or after the applicable date*."  2019 WL 2374244, at *5 n.14 (emphasis added).  Because Plaintiff's application was pending on May 20, 2019, and the ALJ hearing in this case did not occur until June 8, 2020, the new social security ruling, SSR 19-2p, applies here.

[16] Although the Ninth Circuit in *Burch* relied on SSR 02-01p, the obesity social security ruling then in effect and the predecessor to SSR 19-2p, the *Burch* Court's decision nevertheless remains good law.  *See* 400 F.3d at 683; *see also* SSR 02-01p, 2002 WL 34686281l; SSR 19-2p, 2019 WL 2374244.  SSR 02-01p and SSR 19-2p are substantively similar – and, in fact, contain identical language in many places.  *See* Harvey L. McCormick, 1 Social Security Claims and Procedures § 8:140, Obesity (6th ed. 2009 & 2021 update) (noting that SSR 19-2p in places uses "less direct language than [SSR] 02-01p," but nevertheless "repeats" and "continues to allow" for the recognition of obesity's impact on a claimant's functional limitations; *see also Burch*, 400 F.3d. at 682 (relying on SSR 02-01p for the proposition that obesity cases are considered "based on the information in the case record"); *cf.* SSR 19-2p, 2019 WL 2374244, at *2 (noting that the SSA "evaluate[s] each case based on the information in the case record").  Given the substantive similarities between the two social security rulings, the court notes that the Ninth Circuit's opinion in *Burch*, along with its opinions in other social security appeals involving SSR 02-01p, likely continues to apply in obesity cases in which the new social security ruling, SSR 19-2p, now governs.  *See, e.g.,* SSR 19-2p, 2019 WL 2374244 *3 ("We consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical

United States District Court
Northern District of California

1    determined whether obesity caused any physical or mental impairments." *Id.*

2                    **b.      Analysis**

3           Plaintiff argues that the ALJ erred in failing to explicitly discuss her obesity again at step

4    four.  Other than to state that her obesity "clearly interfered with her ability to perform the

5    physical demands of medium-level work," Plaintiff does not point to any medical opinions or

6    evidence regarding limitations specifically associated with her obesity.  Pl.'s Mot. 20.  The

7    Commissioner responds that the ALJ properly considered her obesity, noting that "[n]o doctor,

8    past or present, has opined that Plaintiff's obesity causes significant functional limitations."

9    Def.'s Mot. 15.

10          Here, although the ALJ did not explicitly address Plaintiff's obesity in her step four

11   discussion, A.R. 25-28, she did adequately account for the functional limitations posed by

12   Plaintiff's obesity in her prior step two discussion, demonstrating that she had in fact conducted

13   the inquiry required by SSR 19-2p.  *See* A.R. 23.  Ninth Circuit law required no more.  In *Burch*,

14   the Ninth Circuit held that an ALJ adequately considered a claimant's obesity where there was

15   nothing in the record to suggest the claimant's "obesity exacerbated her other impairments." 400

16   F.3d at 682.  The *Burch* Court found that the ALJ properly considered the functional limitations

17   imposed by the claimant's obesity when the ALJ acknowledged physicians' notes regarding the

18   claimant's obesity, as well as possible effects of the obesity on the claimant's back problems.  *Id.* at

19   684.  Furthermore, the court noted that neither the claimant, nor the evidence in the record,

20   presented "any functional limitations as a result of [the claimant's] obesity that the ALJ failed to

21   consider." *Id.*

22          The ALJ here adequately considered Plaintiff's obesity-related functional limitations given

23   the dearth of medical evidence.  Importantly, like the *Burch* plaintiff, Plaintiff  here has failed to

24

25   ─────────────────────
     or mental impairments.  If the person's obesity, alone or in combination with another
26   impairment(s), significantly limits his or her physical or mental ability to do basic work activities,
     we find that the impairment(s) is severe."); *cf.* SSR 02-01p, 2002 WL 34686281, at *4  ("[W]e
27   will find that obesity is a 'severe' impairment when, alone or in combination with another
     medically determinable physical or mental impairment(s), it significantly limits an individual's
28   physical or mental ability to do basic work activities.  We will also consider the effects of any
     symptoms (such as pain or fatigue) that could limit functioning.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1  cite to any medical evidence in the record demonstrating that her obesity exacerbated her other

2  impairments or functional limitations.  *See* 400 F.3d at 684.  Nor did Plaintiff allege any obesity-

3  related limitations in her disability application, function report, or hearing testimony.  *See* A.R.

4  539 (alleging disability based on seizures, panic attacks, anxiety, and severe depression in October

5  2018); A.R. 549-557 (no mention of obesity in Plaintiff's October 2018 function report); A.R.

6  419-447 (no mention of obesity in Plaintiff's June 8, 2020 hearing testimony).

7  Because the ALJ complied with SSR 19-2p and considered the effects of Plaintiff's obesity

8  on her functional limitations, the court finds that the ALJ properly considered Plaintiff's obesity

9  and remand is not warranted on this basis.  *See Santiago v. Saul,* 777 F. App'x 237, 238 (9th Cir.

10  2019) (concluding that the ALJ did not err in failing to consider the impact of the plaintiff's

11  obesity on his functional limitations where "the ALJ considered obesity in conjunction with [the

12  plaintiff's] other severe impairments and [the plaintiff] pointed to no functional limitations that the

13  ALJ failed to consider"); *accord Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016); *see also*

14  *Despas v. Colvin*, No. C-14-0681 DMR, 2015 WL 899953, at *9 (N.D. Cal. Mar. 2, 2015)

15  (concluding that ALJ adequately considered the functional limitations of Plaintiff's obesity where

16  they specifically noted they did so in accordance with SSR 02-01p and where plaintiff failed to

17  "come forward with evidence of any nexus between obesity and additional limitations").

18  **C.    Constitutional Issue**

19  Finally, Plaintiff argues that she is entitled to a new hearing before a new ALJ because the

20  ALJ's delegation of authority came from the Commissioner, whose appointment was

21  constitutionally defective pursuant to United States Supreme Court precedent.  *See Seila Law*, 140

22  S. Ct. at 2197 (holding that the Consumer Financial Protection Bureau's ("CFPB") removal

23  structure, which allowed for the CFPB director to be removed by the President of the United

24  States only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3),

25  violated the separation of powers by insulating the director from removal by the President).  The

26  Commissioner accurately concedes that 42 U.S.C. § 902(a)(3), which limits the President's

27  authority to remove the Commissioner, violates the separation of powers to the extent it prohibits

28  the President from removing the Commissioner without cause.  *See* Def.'s Mot. 15; *see also*

United States District Court
Northern District of California

1   *Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021) (concluding that a provision limiting the President

2   to a removal of the Federal Housing Finance Agency director for cause violated the separation of

3   powers for the same reasons set forth in *Seila*).

4         The Ninth Circuit recently addressed and rejected a nearly identical constitutional

5   challenge in *Kaufmann v. Kijakazi*, 32 F.4th 843, 840 (9th Cir. 2022).  In *Kaufmann*, the Ninth

6   Circuit acknowledged that § 902(a)(3) "violates separation of powers principles and must be

7   severed from the statute."  *Id.* at 846.  However, the *Kaufmann* court concluded that an actual

8   showing of harm is still required to warrant relief.  *Id.* at 849 (citing *Decker Coal Co. v.

9   Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (refusing to unwind the ALJ's decision where there

10   was no showing that the alleged unlawful removal provision "tainted" the ALJ's decision)); *accord

11   Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022) (citing

12   *Collins*, 141 S. Ct. at 1787-88) (holding that a removal procedure that violates the separation of

13   powers does not automatically render void all actions taken by the director).

14         Plaintiff suggests that she suffered harm based simply on the "flawed delegation of

15   authority."  Pl.'s Mot. 23.  The *Kaufmann* court specifically rejected such generalized showings of

16   harm, holding instead that a plaintiff is required to show that the removal restriction affected her in

17   a particularized way, "for example, that the President took an interest in her claim or that the

18   Commissioner directed the Appeals Council to decide her case in a particular way because of the

19   statutory limits on the President's removal authority."  32 F.4th at 850; *see also Bayview Loan

20   Servicing, LLC v. 6364 Glenolden St. Tr.*, 2021 WL 4938115, at *2 (9th Cir. Oct. 22, 2021)

21   (explaining that plaintiff could recover damages for alleged unlawful removal provision under

22   *Collins* "only by causally linking a specific, tangible harm to the for-cause removal provision").

23   As in *Kaufmann,* Plaintiff fails to meet her burden of demonstrating actual harm here.  *See* 32

24   F.4th at 850 (stating that because "[n]othing in the record suggest[ed] any link whatsoever

25   between the [relevant] removal provision and [the] [c]laimant's case[,]" the claimant's "argument

26   rest[ed] solely on speculation that the Commissioner theoretically might have acted differently").

27         In sum, while the removal clause in 42 U.S.C § 902(a)(3) violates the separation of

28   powers, it does not automatically cause harm to Plaintiff; nor does the Commissioner's delegation

of authority to the ALJ automatically harm Plaintiff.  Rather, the basis for the court's determination to reverse the Commissioner's final decision is the court's conclusion that the Appeals Council should have considered the new evidence submitted by Plaintiff and that the ALJ erred in failing to develop the record further regarding the functional limitations associated with Plaintiff's mental impairments and PNES.

## V.        CONCLUSION AND DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014).  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  On remand, the ALJ must properly evaluate the issues discussed above based on the applicable law and guidance provided in this opinion.

For the foregoing reasons, the court grants in part and denies in part Plaintiff's motion for summary judgment, denies Defendant's cross-motion for summary judgment, and remands this case for further proceedings.

**IT IS SO ORDERED.**

Dated: July 5, 2022



Donna M. Ryu
United States Magistrate Judge